**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

DEBORAH LA SCOLA, M.D.,           )
                                  )
      Plaintiff,              )
                                  )
    v.                        )        Case No. <u>  4:24-cv-00564  </u>
                                  )
SSM MEDICAL GROUP, INC.,          )
                                  )
  **Serve:**   **Registered Agent**      )
           **CT Corporation System**  )
           **120 South Central Avenue** )
           **Suite 400**              )
           **Clayton, MO 63105**       )
and                               )
                                  )
ST. LOUIS UNIVERSITY,             )
                                  )
  **Serve:**   **221 N. Grand Blvd.**     )
           **St. Louis, MO 63103**     )
                                  )
          Defendants.           )

## COMPLAINT

Plaintiff Deborah La Scola ("Dr. La Scola" or "Plaintiff") states the following for her Complaint against Defendants SSM Medical Group, Inc. ("SSM") and Saint Louis University, formerly d/b/a SLUCare Physician Group ("SLU" or, collectively with SSM, "Defendants").

## PRELIMARY STATEMENT

1.      Dr. La Scola is a board-certified physician who was employed as a urologist by defendants SSM and SLU from 2019 until SSM unlawfully terminated her on December 31, 2022. At all times relevant herein, Defendants paid her less than her male colleagues for doing the same work. Dr. La Scola complained about the inequitable pay treatment by Defendants and also complained when a male colleague's substandard medical treatment of a patient resulted in the

1

patient's death. SSM and SLU allowed her to be harassed by her male colleague, failed to investigate her complaints, and ultimately terminated her employment because of her gender and in retaliation for her complaints.

2.     Dr. La Scola brings this action to remedy unequal pay, discrimination and harassment based on her gender/sex, and retaliation for reporting the discrimination and harassment in violation of federal statutes, including, the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII") and the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d).

3.     Dr. La Scola seeks compensatory and punitive damages, attorneys' fees and costs, and any other appropriate legal and equitable remedies under the applicable laws.

## PARTIES, JURISDICTION AND VENUE

4.     Dr. La Scola is a female resident of Cape Girardeau County, Missouri.

5.     SSM is a corporation organized under Missouri law and has its principal place of business in St. Louis County, Missouri.

6.     At all times relevant to this case, SSM conducted business in Missouri by operating hospitals and health care groups, including SSM Health's St. Joseph Hospital—Lake St. Louis ("SJ-LSL"), where Plaintiff was employed to work.

7.     SLU is a benevolent corporation organized under the laws of Missouri and has its principal place of business in St. Louis, Missouri.  At all times relevant to this case, SLU conducted business in Missouri by operating, among other things, a university who employed physicians who were engaged in clinical practices in defendant SSM's hospitals.

8.     This Court has subject-matter jurisdiction in this case under 28 U.S.C. §§ 1331 and 1343(a)(4) because Dr. La Scola asserts claims arising under Title VII and the EPA.

2

9.      Venue is proper in the Eastern District of Missouri under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in St. Louis County, Missouri where Plaintiff was discriminated against and terminated by Defendants.

10.     Venue is proper in the Eastern Division under Local Rule 2.07(B)(2) because the claim for relief arose in St. Charles County, Missouri where Plaintiff was discriminated and retaliated against and terminated by Defendants.

## ADMINSTRATIVE EXHAUSTION

11.     On or about March 21, 2023, Dr. La Scola filed a Charge of Discrimination against SSM and SLU with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on sex and retaliation for reporting discrimination based on sex.

12.     On or about January 19, 2024, the EEOC issued Dr. La Scola a Notice of Right to Sue regarding defendant SLU.

13.     On or about February 7, 2024, the EEOC issued Dr. La Scola a Notice of Right to Sue regarding Defendant SSM.

14.     Dr. La Scola filed this Complaint within 90 days of receiving the Notices of Right to Sue from the EEOC.

## GENERAL FACTUAL ALLEGATIONS

15.     Effective July 1, 2019, Dr. La Scola was hired as a urologist at defendant SSM, assigned to SSM Health's St. Joseph Hospital—Lake St. Louis ("SJ-LSL"), and as an Assistant Professor, Clinical Educator, non-tenure track in the Department of Surgery, Division of Urological Surgery, of defendant SLU.

16.     At all relevant times herein, Dr. La Scola held clinical appointments and hospital privileges as a member of the medical staff at SJ-LSL in the Department of Urology and an

academic appointment of Assistant Professor as a faculty member of SLU's Department of Surgery. SSM and SLU were Dr. La Scola's joint employer because of an agreement between them and the common management, supervision, and ability to terminate services of faculty physician providers and SSM and SLU jointly controlled the means and methods of her work as urologist. Alternatively, SSM and SLU operate SJ-LSL, and staff and supervise physicians there as a single integrated enterprise.

17.     Upon information and belief, defendant SSM had the authority and responsibility for establishing policy, managing quality of care and providing organizational management for SJ-LSL, one of the hospitals that it operates.

18.     At all times herein, SSM provided the necessary services, facilities, materials, supplies and equipment to support the work performed by SLU faculty physicians; was responsible for ensuring medical services provided by SLU faculty physician providers comply with applicable law, including its Medical Staff Bylaws, Rules and Regulations, was responsible for the clinical administrative direction of delivery of medical services at SJ-LSL by SLU faculty physician providers and was responsible for the oversight of implementation of evaluations of clinical appointments and privileges.

19.     SSM also established the assignment schedules, including hours, locations and functions of the faculty physician providers.

20.     Dr. La Scola's contract she signed with SLU stated the scope of her clinical practice "will be providing urological surgical services" at SJ-LSL with all surgery to be performed at SJ-LSL or another SSM site.  Moreover, she was expected and required to provide emergency room and inpatient call coverage with other urologists on the medical staff at SJ-LSL.  Her salary was guaranteed by SLU for the first two years of her employment.

4

**EMPLOYMENT OF LANDON**

21.     In April 2019, SLU was in discussions with Dr. Thomas Landon ("Dr. Landon"), a male physician specializing in urology, to hire him to fill the second open urology physician position at SJ-LSL. Upon information and belief, during the recruiting process, Dr. Landon met with representatives from SSM and SLU.

22.     In March 2020, Dr. Landon was hired and began working at SJ-LSL's Urology Department at which time Dr.  La Scola and Dr. Landon became colleagues in the urology practice at SSM.

**TRANSITION TO A SSM CONTRACT**

23.     At a meeting on or about April 19, 2021, Dr. La Scola was advised by representatives from SLU and SSM that her physician agreement would be renewed but that it would transition from SLU to SSM.

24.     On May 5, 2021, Dr. La Scola requested an update on the status of her employment agreement and noted that Dr. Landon and her other male physician colleagues already had such employment agreements in place.

25.     For approximately ten months after the expiration of her original contract, SSM ignored Dr. La Scola's multiple requests for a new employment agreement.

26.     A year after Dr. La Scola's request for an update on the status of her employment agreement, on May 3, 2022, SSM finally offered to work on a "refreshed" employment agreement, without acknowledging that Dr. La Scola had been requesting SSM do so since early in 2021.

27.     On May 9, 2022, Dr. La Scola met with Chief Clinical Officer Dr. Bob Pendleton ("Pendleton") regarding the lengthy delay for providing Dr. La Scola an employment agreement.

5

28.     Upon information and belief, her male colleagues at SSM received their new contracts with SSM before the expiration of their original contracts.

29.     Following the May 9, 2022 meeting, Dr. La Scola made clear to Pendleton that she had "not been treated fairly" compared to her male colleagues regarding her employment agreement.

30.     For example, Dr. Landon received a renewal of his employment agreement prior to the expiration of his then-current employment agreement and at least six months prior to Dr. La Scola's receipt of any employment agreement from SSM, even though he began working at SJ-LSL nine months after Dr. La Scola.

31.     In contrast, SSM provided Dr. La Scola a draft employment agreement for her to review on May 11, 2022 – over a year after she requested it.

32.     On June 10, 2022, Dr. La Scola again met with Pendleton to discuss the terms of the draft employment agreement.

33.     After receiving no communication regarding an employment agreement following the June 10, 2022 meeting, on June 20, 2022, Dr. La Scola requested an update and indicated that she did not intend to continue to work without "a written confirmation of . . . a fair and equitable salary."

34.     Following several more days of communication with Schoeck, Pendleton and others, Dr. La Scola was finally able to execute the Employment Agreement with SSM on June 23, 2022, and the Employment Agreement became effective July 1, 2022.

35.     The more than year-long delay in executing the Employment Agreement with SSM negatively impacted Dr. La Scola's earnings, and during that time her male counterparts were compensated at a higher rate than Dr. La Scola for doing the same work.

6

**REPORT OF PATIENT CARE ISSUE**

36.     On June 23, 2022, Dr. La Scola requested Dr. Landon to check on the urine culture results for her patient while Dr. La Scola was out of town, and she specifically requested that Dr. Landon confirm the antibiotic prescribed by Dr. La Scola was appropriately addressing the bacteria in the patient's urine.

37.     Urine culture results for the patient were available on June 25, 2022, but Dr. Landon failed to promptly review or address the results.

38.     Upon Dr. La Scola's return to the office on June 30, 2022, she observed that the patient had not received the appropriate antibiotic, and Dr. La Scola then prescribed the appropriate antibiotic along with a notation that the antibiotic she prescribed was the only oral option for the patient.

39.     Despite Dr. La Scola's notation regarding the specific antibiotic required, SSM staff did not fill the prescription that Dr. La Scola ordered, and they instead disregarded Dr. La Scola's direction and referred to Dr. Landon's prior prescription for a different antibiotic.

40.     On July 5, 2022, Dr. La Scola reported Dr. Landon's errors in patient care to management and was informed by SSM that an event report would be written.

41.     The patient died on July 8, 2022, due to sepsis related causes.

**GENDER HARASSMENT BY LANDON**

42.     On July 18, 2022, Dr. Landon directed an outburst toward Dr. La Scola in the operating room, berating Dr. La Scola with vulgar language and falsely accusing her of breaking instruments.  During the incident, Dr. Landon also threw gloves around the operating room in the presence of a patient under sedation.  Dr. La Scola filed a formal report regarding this incident and reported it to several SSM administrators, including Steve Schoeck ("Schoeck"), Administrator—

7

Surgical/Procedural Specialties, and Sarah Skeeters ("Skeeters"), a SSM manager of clinic operations.

43.    Following Dr. La Scola's reports of the Dr. Landon's errors in patient care resulting in the patient's July 8, 2022 death and Dr. Landon's July 18, 2022 operating room outburst, Dr. Landon lodged unfounded complaints against and raised meritless concerns regarding Dr. La Scola.

44.    On July 28, 2022, Dr. Landon sent Dr. La Scola a text message, informing Dr. La Scola she needed to cover practice call in August. Dr. La Scola offered to meet the following Monday to discuss the issue but, despite agreeing to meet, Dr. Landon did not attend the meeting.

45.    Dr. La Scola reported Dr. Landon's behavior and SSM's different treatment of Dr. La Scola to SSM administration on numerous occasions.

46.    On August 2, 2022, Dr. Landon emailed Dr. La Scola and staff, dictating a new call policy, including refusal to provide coverage for Dr. La Scola's patients, despite lacking authority to make unilateral changes to call policy. Dr. Landon also demanded a complete separation between himself and his staff from Dr. La Scola and her staff – another change in policy Dr. Landon did not have the authority to implement. Dr. Landon also lodged unfounded and erroneous allegations that Dr. La Scola refused to participate in equitable call rotation.

47.    On August 3, 2022, Dr. La Scola reported to SSM administrators Schoeck and Pendleton that the situation with Dr. Landon was "escalating and spiraling out of control." Specifically, Dr. La Scola reported that Dr. Landon was "scouring" her schedule and accusing SSM staff of scheduling Dr. La Scola with patients that Dr. Landon said "belonged" to him, insisting that the appointments be changed.

8

48. Later on August 3, 2022, Dr. La Scola explicitly requested that SSM "put a stop to the bullying."

49. On August 15, 2022, Dr. La Scola became aware that no formal report had been written regarding the July 8, 2022, death of the patient Dr. Landon had cared for in Dr. La Scola's absence.

50. On August 16, 2022, Dr. La Scola informed Skeeters that Dr. La Scola became aware of disparities in policies applied to Dr. Landon and herself regarding vendor visits. A vendor had informed Dr. La Scola that SSM required the vendor to arrange all office visits to Dr. La Scola and her staff through the office manager, but the same was not required for visits to Dr. Landon and his staff.

51. On August 16, 2022, Dr. Landon failed to respond to Dr. La Scola's text message regarding one of his patients who had been admitted to the hospital.

52. On September 2, 2022, Dr. La Scola submitted a formal report regarding the circumstances of the July 8, 2022, death of the patient Dr. Landon had cared for in Dr. La Scola's absence.

53. On September 14, 2022, Dr. La Scola met with SSM human resources employees Schlandsker and Julie Ketts ("Ketts") and discussed her concerns regarding SSM creating a hostile work environment. At the meeting, Dr. La Scola reported numerous instances of experiencing disparate treatment by SSM as well as Dr. Landon's erratic and hostile behavior including, but not limited to:

    a. SSM's disregard for Dr. La Scola's opinions related to hiring decisions, while Dr. Landon's desires and directives regarding hiring personnel were followed.

9

b. In March 2021, Dr. Landon agreed in writing to provide alternate call coverage for Dr. La Scola, only to later state in an email that he would not provide the coverage.

c. On April 4, 2022, Dr. Landon disparaged Dr. La Scola to a patient by stating that she was merely an "ok" urologist.

d. On May 31, 2022, Dr. Landon was absent for a scheduled surgery, and nurses were unable to contact him.

e. During the weekend on June 10, 2022, Dr. La Scola assisted with solving Dr. Landon's post operative issues that had arisen. Dr. Landon refused to accept that the issue was a problem until provided photographic documentation by Dr. La Scola.

f. On September 6, 2022, the DePaul Hospital operating room was unable to reach Dr. Landon by telephone regarding a patient that was on the operating table and under anesthesia more than fifteen minutes.

g. Dr. Landon risks the staff's safety by throwing instruments into the sharps container and covering sharps with a towel.

h. Dr. Landon fails to communicate with Dr. La Scola when he will be unavailable to discuss his patients for whom Dr. La Scola may need to provide care in his absence.

i. Dr/ Landon canceled surgical cases with only one day notice to instead play golf, while citing "family" as the reason for the cancellation.

j. Dr. La Scola's well-founded belief that the majority of patient referrals made to the office were intentionally channeled to Dr. Landon's practice.

k.      The office manager fails to address concerns reported by patients concerning their treatment by Dr. Landon.

54.     In response to her reports of the substandard patient care provided by Dr. Landon and errors by his staff and his treatment and harassment of her because of her gender/sex, Dr. La Scola was accused of being nit-picky and informed her standards are too high.

55.     Following the September 14, 2022 meeting, Dr. La Scola reiterated to Schlandsker and Ketts her commitment to "continue to do everything [she] can to contribute to a good work environment" and that she would "continue being a team player and will do everything [she] can to help."

56.     Upon information and belief, SSM did not investigate any of Dr. La Scola's complaints about Dr. Landon's treatment of her because of her gender and in retaliation for complaining about SSM's inequitable treatment of her versus her male colleagues.

57.     By letter dated September 23, 2022, from SSM Health Regional President Kevin Elledge, Dr. La Scola was notified that her Employment Agreement was terminated without cause effective December 31, 2022, and Dr. La Scola was placed on administrative leave effective immediately.

58.     Upon information and belief, Dr. Landon told SSM of his preference to work with male doctors.

59.     Upon information and belief, following Dr. La Scola's termination SSM hired a male doctor to fill the vacant position left by Dr. La Scola's termination.

60.     While Dr. La Scola was employed by SSM, male physicians employed by SSM in the Urology Department received additional compensation for emergency department call

11

coverage in excess of seven days per month pursuant to call pay agreements entered into between the male physicians and SSM at the time the male physician began employment with SSM.

61.     On more than one occasion, Dr. La Scola requested a call pay agreement that would compensate her for emergency department call coverage in excess of seven days per month.

62.     Without a call pay agreement, SSM expected Dr. La Scola to perform emergency call coverage in excess of seven days per month without additional compensation – even though SSM provided additional compensation to male physicians for such emergency call coverage.

63.     Dr. La Scola did not receive a draft call pay agreement until August 24, 2022, approximately one month before SSM terminated her employment.

64.     Following her termination by SSM, Dr. La Scola was unable to obtain comparable employment in the St. Louis, Missouri, metropolitan area, and she ultimately had to accept employment in Cape Girardeau, Missouri at a significantly lower rate of pay.

65.     Upon information and belief, her inability to obtain employment in the St. Louis, Missouri metropolitan area was due to retaliatory efforts by Landon and/or SSM to "blackball" Dr. La Scola from such employment by providing negative references when contacted by perspective employers because of the reports Dr. La Scola made to SSM regarding sex discrimination, harassment, and hostile work environment.

<u>**COUNT I – TITLE VII**</u>
**DISCRIMINATION BASED ON SEX**

66.     Plaintiff restates and incorporates by reference all proceeding allegations of this Complaint as fully set forth herein against defendants SSM and SLU.

67.     Plaintiff's gender/sex is a protected class under Title VII.

68.     Plaintiff was qualified for her position as physician in the Urology Department of SJ-LSL.

69.     Defendant SSM and SLU imposed different terms and conditions of employment on Plaintiff because she was female.

70.     Defendant SLU discharged Plaintiff's employment effective December 31, 2022.

71.     Plaintiff's sex was a motivating factor in Defendant's decision to terminate her.

72.     Defendant SSM's stated grounds for discharging Plaintiff were pretextual.

73.     Defendants treated similarly situated male employees more favorably than it treated Plaintiff, including but not limited to providing employment agreements in a reasonable time to the male urologists and paying them more for the same work, providing additional compensation for emergency department call to male urologists in excess of seven days per month, and failing to protect Dr. La Scola from a hostile work environment from Dr Landon and failing to investigate Dr. La Scola's concerns regarding Dr. Landon but purportedly investigating and crediting Dr. Landon's complaints against her because he is male.

74.     As a direct and proximate result of her discriminatory treatment, including her discharge, Plaintiff suffered damage, including but not limited to: lost wages and benefits, emotional distress, humiliation, and loss of enjoyment of life.

75.     Defendants acted with reckless indifference to Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

76.     Plaintiff demands to be reinstated or awarded front pay in lieu thereof.

77.     Plaintiff is entitled to recover her reasonable attorneys' fees and costs.

### COUNT II – TITLE VII
### HOSTILE WORK ENVIRONMENT BASED ON SEX

78.     Plaintiff restates and incorporates by reference all proceeding allegations of this Complaint as fully set forth herein.

79.     Plaintiff was qualified for her position as physician in the urology department.

13

80. While working for Defendants, Plaintiff was subjected to harassment by her coworker, Dr. Landon, and Defendants' administration, including but not limited to, frequent use of disparaging language, administration continued refusal to provide an employment contract to Dr. La Scola, SSM's refusal to enter into a call pay agreement with Dr. La Scola, unfounded complaints about Plaintiff, and being subjected to harassing outbursts by Dr. Landon.

81. The harassment Plaintiff endured was unwelcome.

82. The harassment Plaintiff endured was based on her gender/sex.

83. The harassment Plaintiff endured was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be objectively hostile and abusive.

84. Plaintiff subjectively believed the harassment she endured made her work environment hostile and abusive.

85. Defendants knew or should have known of the harassment Plaintiff endured because Plaintiff reported it on multiple occasions to her superiors, the human resources department and administrators.

86. Defendants failed to take prompt and appropriate corrective action to end the harassment Plaintiff endured.

87. As a direct and proximate result of the harassment Plaintiff endured from her coworker, Plaintiff suffered damage, including but not limited to emotional distress, humiliation, and loss of enjoyment of life.

88. Defendants acted with reckless indifference to Plaintiff's rights, entitling Plaintiff to punitive damages.

89. Plaintiff is entitled to recover her reasonable attorneys' fees and costs.

14

## COUNT III – TITLE VII
### RETALIATION

90.   Plaintiff restates and incorporates by reference all proceeding allegations of this Complaint as fully set forth herein.

91.   Plaintiff was qualified for her position as physician in the urology department.

92.   While working Defendants, Plaintiff complained of gender/sex-motivated discrimination and harassment to her superiors, the human resources department and administrators.

93.   Plaintiff reasonably believed the discrimination and harassment of which she complained was based on her gender/sex.

94.   After Plaintiff complained of discrimination and harassment, Plaintiff's employment was terminated based on pretextual grounds.

95.   Terminating one's employment would dissuade a reasonable worker in the same or similar circumstances from making or supporting a charge of discrimination.

96.   Defendant SSM would not have terminated Plaintiff's employment but for Plaintiff's complaints of discrimination and harassment.

97.   Defendant SSM's stated grounds for discharging Plaintiff were pretextual.

98.   As a direct and proximate result of Defendant SSM's retaliation against Plaintiff for complaining of gender/sex motivated harassment and discrimination, Plaintiff suffered damage, including but not limited to: lost wages and benefits, emotional distress, humiliation, and loss of enjoyment of life.

99.   Defendant SSM acted with reckless indifference to Plaintiff's rights, entitling Plaintiff to punitive damages.

100.   Plaintiff demands to be reinstated or awarded front pay in lieu thereof.

15

101. Plaintiff is entitled to recover her reasonable attorneys' fees and costs.

**COUNT IV – EPA**
**UNEQUAL PAY IN VIOLATION OF**
**EQUAL PAY ACT AGAINST BOTH DEFENDANTS**

102. Plaintiff restates and incorporates by reference all proceeding allegations of this Complaint as fully set forth herein.

103. Prior to Defendant SSM's discriminatory and retaliatory termination of Dr. La Scola, Dr. La Scola was performing a common core of tasks associated with her job that was substantially equal to her male counterparts. Dr. La Scola's job title, job description, and official responsibilities were substantially equal to that of her male counterparts, and required equal skill, effort and responsibility.

104. The conditions where Dr. La Scola and her male counterparts performed the work were the same or substantially the same.

105. Dr. La Scola's male counterparts were paid more under these circumstances, in violation of the EPA.

106. As a direct and proximate result of Defendants' unlawful discriminatory actions against Plaintiff in violation of the EPA, Plaintiff suffered damage, including but not limited to: lost wages and benefits, emotional distress, humiliation, loss of enjoyment of life, and the costs of bringing this action.

107. Defendants willfully violated Dr. La Scola's rights under the EPA, and, as a result, Defendants are liable for liquidated damages.

**DEMAND FOR JURY TRIAL**

108. Plaintiff hereby demands trial by jury on all claims triable to a jury.

**WHEREFORE,** Plaintiff Dr. Deborah La Scola respectfully requests that this Court enter judgment in her favor and against SLU and SSM and award Plaintiff compensatory and punitive damages, reinstatement or front pay, litigation costs, reasonable attorneys' fees, post-judgment interest, and such other relief as the Court deems just and proper.

Dated: April 18, 2024                    Respectfully submitted,

                                       **BLITZ, BARDGETT & DEUTSCH, L.C.**

                                       By:    */s/ Kelley F. Farrell*
                                          Kelley F. Farrell, #43027 (MO)
                                          Andrew W. Blackwell, #64736 (MO)
                                        120 S. Central Ave., Suite 1500
                                        St. Louis, Missouri 63105
                                        Telephone: (314) 863-1500
                                        Facsimile: (314) 863-1877
                                        kfarrell@bbdlc.com
                                        ablackwell@bbdlc.com

                                       ***Attorneys for Plaintiff Dr. Deborah La Scola***

17