**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

DEBORAH LA SCOLA, M.D.,       )
                                        )
           Plaintiff,        )
                                        )
          v.               )    Case No. 4:24-cv-00564-JSD
                                        )
SSM MEDICAL GROUP, INC., et al.,  )
                                        )
          Defendants.     )

**PLAINTIFF DEBORAH LA SCOLA'S MOTION
FOR PRE-JUDGMENT INTEREST AND FRONT PAY**

COMES NOW Plaintiff Deborah La Scola, M.D. ("Plaintiff" or "Dr. La Scola"), through her undersigned attorneys, and moves for: (1) prejudgment and post-judgment interest; and (2) an equitable award of front pay. In support of this Motion, Plaintiff states as follows:

**INTRODUCTION**

This Court presided over a seven-day jury trial beginning on June 17, 2026. After considering the evidence, the jury found in favor of Dr. La Scola on her retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) (Count III), against SSM Medical Group, Inc. The jury awarded Dr. La Scola $793,000.00 in lost wages, $285,500.00 in other damages excluding lost wages and benefits, and $5,750,000.00 in punitive damages, for a total verdict of $6,828,500.00. The Clerk entered Judgment on the verdict on June 26, 2026. (Doc. 163)[1].

**ARGUMENT**

**A.** ***Prejudgment and Post-Judgment Interest***

"A postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)." *Osterneck v. Ernst & Whinney*, 489 U.S.

---

[1] The Clerk's Judgment in favor of Plaintiff was filed on June 26, 2026, but was not entered in the CM-ECF System until June 29, 2026 at 2:01 PM CDT, and transmitted to the parties.

169, 175 (1989).  Similarly, the proper mechanism for moving for post-judgment interest is via a Rule 59(e) motion.  *See, e.g.*, *Liquid Cap. Exch., Inc. v. BDC Grp., Inc.*, No. 20-CV-89 CJW-MAR, 2022 WL 18539376, at \*1 (N.D. Iowa Oct. 3, 2022).

Prejudgment interest is subject to Rule 59(e) because it "is an element of plaintiff's complete compensation" and "does not raise issues wholly collateral to the judgment in the main cause of action."  *Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 488 (8th Cir. 1992) (quoting *Osterneck*, 489 U.S. at 175).

Prejudgment interest should be awarded whenever lawfully due damages are withheld, "unless there are exceptional circumstances to justify the refusal." *Finan v. Good Earth Tools, Inc.*, No. 4:06-CV-878CAS, 2008 WL 1805639, at \*9 (E.D. Mo. Apr. 21, 2008) (quoting  *Cargill, Inc. v. Taylor Towing Service, Inc.*, 642 F.2d 239, 242 (8th Cir. 1981)). Title VII itself authorizes prejudgment interest as part of the make-whole backpay remedy. That is because the purpose of prejudgment interest is to make the plaintiff whole by accounting for the time value of money wrongfully withheld.  Prejudgment interest also advances fairness and efficiency because, "where liability and the amount of damages are fairly certain, [prejudgment interest] promotes settlement and deters an attempt to benefit unfairly from the inherent delays of litigation." *E.E.O.C. v. Rath Packing Co.*, 787 F.2d 318, 333 (8th Cir. 1986) (citation and quotation marks omitted).

In deciding whether to award prejudgment interest, and in what amount, a district court must "examine—or in the case of a postjudgment motion, reexamine—matters encompassed within the merits of the underlying action."  *Osterneck*, 489 U.S. at 176. Relevant considerations include "whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether

2

the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness." *Id.*

Courts in the Eighth Circuit generally calculate prejudgment interest using the Internal Revenue Service underpayment rate set forth in 26 U.S.C. § 6621. *See, e.g.*, *EEOC v. Convergys Customer Mgmt. Grp., Inc.*, No. 4:04-CV-846 CAS, 2006 WL 2345541, at \*5 n.2 (E.D. Mo. July 7, 2006), *aff'd sub nom. E.E.O.C. v. Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d 790 (8th Cir. 2007). Under § 6621(a)(2), "the underpayment rate established under this section shall be the sum of--(A) the Federal short-term rate determined under subsection (b), plus (B) 3 percentage points." The underpayment rate is adjusted quarterly. During the period between Dr. La Scola's discharge and the entry of Judgment, the rate was 7% for the first three quarters of 2023; 8% from the fourth quarter of 2023 through the fourth quarter of 2024; 7% from the first quarter of 2025 through the first quarter of 2026; and 6% for the second quarter of 2026.[2] *See* § 6621(a)(2). Prejudgment interest is calculated from the date of the unlawful act to the date of judgment. *See Behlar v. Smith*, 719 F.2d 950, 954 (8th Cir. 1983).

Post-judgment interest is different. Unlike prejudgment interest, which is discretionary—although ordinarily awarded absent extraordinary circumstances—post-judgment interest is mandatory and governed by federal law. *Selective Ins. Co. of Am. v. Heritage Constr. Companies, LLC*, No. CV 19-3174 (JRT/JFD), 2024 WL 1886124, at \*3 (D. Minn. Apr. 30, 2024). Section 1961(a) supplies the applicable rate: "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" entry of judgment. 28 U.S.C. § 1961(a);

---

[2] *See Quarterly Interest Rates*, Internal Revenue Serv.,
https://www.irs.gov/payments/quarterly-interest-rates (last visited July 27, 2026).

*Selective Ins. Co.*, 2024 WL 1886124, at \*3. For the calendar week preceding the June 26, 2026 Judgment, that rate was 3.92%.

Post-judgment interest accrues daily "from the day judgment was entered until it is paid" and compounds annually. *Selective Ins. Co.*, 2024 WL 1886124, at \*3 (internal citation omitted). And where prejudgment interest is awarded, post-judgment interest begins to accrue on that prejudgment-interest award "as of the date the court awards pre-judgment interest." *Id.*

Here, the unlawful act was Dr. La Scola's discharge, which became effective on December 31, 2022. Dr. La Scola's lost wages therefore began accruing on January 1, 2023, and continued to accrue through the entry of Judgment on June 26, 2026. Plaintiff calculates prejudgment interest conservatively: the $793,000.00 the jury awarded for Dr. La Scola's lost wages is treated as having accrued ratably over that period—so that interest is charged on each increment of lost wages only from the time Dr. La Scola would have been paid—and interest is applied at the underpayment rate in effect under § 6621 during each calendar quarter, compounded quarterly. On that calculation, which is set out quarter by quarter in the attached **Exhibit A**, Plaintiff is entitled to prejudgment interest in the amount of $106,803.90.

Plaintiff also seeks post-judgment interest on the full amount ultimately owed. On July 20, 2026, Plaintiff submitted her Motion for Bill of Costs seeking $27,275.32 in taxable costs. (Doc. 165). Contemporaneously with this Motion, Plaintiff submits a Motion for Attorneys' Fees, Expenses, and Costs seeking attorneys' fees of $902,545.00, enhanced by a 1.5 multiplier for a total fee award of $1,353,817.50, plus $4,985.40 in nontaxable expenses. Assuming the Court reduces the punitive-damages award to comply with the statutory cap under 42 U.S.C. § 1981a, Plaintiff anticipates a total judgment of $2,479,078.22. Applying the mandatory 3.92% statutory rate, post-judgment interest should accrue on that amount

4

at $266.25 per day beginning on June 26, 2026. If the Court awards prejudgment interest, post-judgment interest should also accrue on that award at $11.47 per day beginning on the date the Court grants this Motion.

### B.   *Front Pay*

Front pay is not an issue for the jury to decide; it is an equitable remedy for the district court to determine after considering the full record and all circumstances of the case. *Excel Corp. v. Bosley*, 165 F.3d 635, 639 (8th Cir. 1999). In exercising that equitable authority, the Court may, in its discretion, hold an evidentiary hearing on reinstatement and front pay. *See Bizelli v. Parker Amchem*, 17 F. Supp. 2d 949, 954 (E.D. Mo. 1998).

Although reinstatement is generally the preferred remedy in unlawful-termination cases, it is not required where reinstatement is impossible or impracticable. *Id.* at 953 (citing *Cowan v. Strafford R-VI Sch. Dist.*, 140 F.3d 1153, 1160 (8th Cir. 1998)). In that circumstance, the district court may award front pay in the exercise of its equitable discretion. *Id.* The Eighth Circuit has explained that front pay is "not so much a monetary award for the salary that the employee would have received but for the discrimination," but instead "the monetary equivalent of reinstatement," appropriate where reinstatement is impracticable or impossible. *Heimer v. Osage Cmty. Sch. Dist.*, No. C04-2014, 2005 WL 2807110, at *5 (N.D. Iowa Oct. 26, 2005) (quoting *Ogden v. Wax Works, Inc.*, 29 F. Supp. 2d 1003, 1012 (N.D. Iowa 1998); citing *Kramer v. Logan Cty. Sch. Dist.*, 157 F.3d 620, 626 (8th Cir. 1998)).

The front-pay calculation should be consistent with the formula used to compute back pay. *Folz v. Marriott Corp.*, 594 F. Supp. 1007, 1018 (W.D. Mo. 1984). And while the Court retains discretion to consider all relevant circumstances in fashioning equitable relief, it may not reject or contradict jury findings on issues properly submitted to the jury. *Heimer*, 2005

5

WL 2807110, at *6. Plaintiff bears the initial burden of proving entitlement to front pay. To satisfy that burden, she must provide the "essential data necessary to calculate a reasonably certain front pay award," including the amount sought, the period for which front pay is requested, the length of time she expected to continue working for Defendant, and the applicable discount rate. *Id.* (citing *Mathieu v. Gopher News Co.*, 273 F.3d 769, 778 (8th Cir. 2001)).

Here, the evidence supports a reasonable and limited front-pay award.  The evidence presented at trial demonstrates that reinstatement is impossible given the breakdown of the relationship between the parties.  Therefore, Plaintiff seeks two years of front pay calculated at an annual salary of $575,000, offset by Plaintiff's current base salary of $300,000.  That calculation yields a total front-pay award of $550,000.  The requested two-year period is grounded in the trial evidence, which established that Defendant SSM generally offers two-year employment contracts to its physicians.  Accordingly, Plaintiff's requested award is both supported by the record and appropriately tailored to serve as the monetary equivalent of reinstatement.  In the alternative, Plaintiff requests an evidentiary hearing on the issue of front pay.

### CONCLUSION

For the foregoing reasons, Plaintiff Deborah La Scola, M.D. respectfully requests that the Court: (1) grant this Motion; (2) award Plaintiff prejudgment interest in the amount of $106,803.90; (3) award Plaintiff post-judgment interest at the statutory rate, accruing at $266.25 per day beginning June 26, 2026, and at an additional $11.47 per day on the prejudgment-interest award beginning on the date the Court grants this Motion; (4) award Plaintiff the equitable relief of front-pay in the amount of $550,000, or, alternatively, an evidentiary hearing on the issue of front pay; and (5) grant such other and further relief as the Court deems just and proper.

Date: July 27, 2026

Respectfully submitted,

**BLITZ, BARDGETT & DEUTSCH, L.C.**

By: /s/ *Andrew W. Blackwell*
Kelley F. Farrell, #43027MO
Andrew W. Blackwell, #64736MO
Ellen J. Bruntrager, #73649MO
120 S. Central Ave., Suite 1500
St. Louis, Missouri 63105
Telephone: (314) 863-1500
Facsimile: (314) 881-4828
kfarrell@bbdlc.com
ablackwell@bbdlc.com
ebruntrager@bbdlc.com

***Attorneys for Plaintiff***

7

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 27, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Erin E. Williams, #60935MO
Mallory S. Zoia, #70377MO
Madeline Nebel, #75692MO
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105
erin.williams@ogletree.com
mallory.zoia@ogletree.com
maddie.nebel@ogletree.com

***Attorneys for Defendants***

/s/ Andrew W. Blackwell